Val Hornstein (SBN 133726)
Val@HornsteinLaw.com
Matthew R. Harrison (SBN 267477)
MHarrison@HornsteinLaw.com
HORNSTEIN LAW OFFICES, PROF. CORP.
235 Pine Street, Suite 1300
San Francisco, CA 94104
Telephone: (415) 454-1490
Facsimile: (415) 520-0414

Timothy B. Hyland (*pro hac vice* pending)
thyland@hylandpllc.com
HYLAND LAW PLLC
1818 Library Street, Suite 500
Reston, VA  20190
Telephone: (703) 956-3566
Facsimile: (703) 935-0349

Attorneys for Defendant TLDS, L.L.C.
d/b/a SRSPLUS

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY WILENS, d/b/a LAKESHORE LAW CENTER,<br><br>                    Plaintiff,<br><br>v.<br><br>AUTOMATTIC, INC., TLDS, L.L.C., d/b/a SRSPLUS, GOOGLE, INC., and DOES 1 through 100,<br><br>                    Defendants. | Case No.: C 14-02419 LB<br><br>**NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TLDS, L.L.C.'S MOTION TO DISMISS AND FOR AN ORDER FINDING PLAINTIFF LIABLE FOR FEES**<br><br>[Filed concurrently with Declaration of Timothy B. Hyland; [Proposed] Order]<br><br>Date:     August 7, 2014<br>Time:     9:30 a.m.<br>Place:     450 Golden Gate Avenue<br>              Courtroom C – 15th Floor<br><br>Judge:   Hon. Laurel Beeler |

# TABLE OF CONTENTS

**Page**

MOTION TO DISMISS ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 3

I.     INTRODUCTION ........................................................................................... 3

      A.    Factual Allegations ........................................................................ 3

      B.    Procedural History ........................................................................ 4

II.    LEGAL STANDARD ..................................................................................... 4

III.   ARGUMENT .................................................................................................. 5

      A.    It is well-established that a claim for contributory trademark     6
            infringement (Count One in the Complaint) cannot
            be maintained against a domain name registrar

      B.    In any event, Plaintiff has not alleged facts establishing     9
            trademark infringement, and in fact, the Complaint
            establishes the non-existence of trademark infringement

      C.    TLDS is immune from an action under the ACPA (Count     11
            Two) under that Act's safe harbor provision

      D.    Even were TLDS not immune, the Complaint contains no     12
            facts setting forth a claim under the ACPA

            1.    Plaintiff has not alleged facts supporting a conclusion     13
                  that TLDS "registered, trafficked in, or used" the
                  Domain Name

            2.    Plaintiff has not alleged that TLDS had a "bad faith     14
                  intent to profit" from the Domain Name

            3.    To the extent Plaintiff intended to bring a claim for     17
                  contributory cybersquatting, no such claim is cognizable
                  at law

IV.   THE COURT SHOULD ORDER PLAINTIFF TO REIMBURSE     17
        TLDS FOR ITS ATTORNEYS' FEES AND COSTS

Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Defendant TLDS,
L.L.C.'s Motion to Dismiss and for an Order Finding Plaintiff Liable for Fees

-ii-

| | | | |
|---|---|---|---|
| A. | | INTRODUCTION | 17 |
| B. | | LEGAL STANDARD | 18 |
| C. | | ARGUMENT | 19 |
| | 1. | Plaintiff's claims are groundless and Plaintiff's conduct unreasonable | 19 |
| | 2. | Plaintiff's action is vexatious and pursued in bad faith | 21 |
| V. | | CONCLUSION | 22 |

Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Defendant TLDS,
L.L.C.'s Motion to Dismiss and for an Order Finding Plaintiff Liable for Fees

-iii-

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                       **Page**

*Am. Online, Inc. v. Huang*, 106 F. Supp. 2d 848 (E.D. Va. 2000)                                 7

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)                                                          5

*Avery Dennison Corp. v. Sumpton*, 189 F.3d 868 (9th Cir. 1999)                                  18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)                                                4, 13

*Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002)                                                  7, 13, 14

*Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005)                                9, 10, 20

*Cairns v. Franklin Mint Co*., 292 F.3d 1139 (9th Cir. 2002)                                     18

*D.S.P.T. Int'l, Inc. v. Nahum*, 2008 WL 754803 (C.D. Cal. March 17, 2008)                       20

*Designing Health, Inc. v. Erasmus*, 2003 WL 25902463 (C.D. Cal. May 1, 2003)                    21

*GoForIt Enter., LLC v. DigiMedia.com L.P.*, 750 F. Supp. 2d 712                                 15
    (N.D. Tex 2010)

*Guichard v. Universal City Studios*, L.L.L.P., 2008 WL 2220434                                  18
    (N.D. Cal. May 7, 2008)

*Hawes v. Network Solutions, Inc.*, 337 F.3d 377 (4th Cir. 2003)                                 12

*In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 986 (9th Cir. 1999)                     5

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005)                                                 5

*Lockheed Martin Corp. v. Network Solutions, Inc.*,                                              11, 13, 14, 16
    141 F. Supp. 2d 648 (N.D. Tex. (2001)

*Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980 (9th Cir. 1999)                 6, 7, 12

*Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949                             6, 7, 8, 12
    (C.D. Cal. 1997), *aff'd*, 194 F.3d 980 (9th Cir. 1999)

*Name.Space, Inc. v. Network Solutions, Inc.*, 202 F.3d 573 (2d Cir. 2000)                       14

*New Kids on the Block v. New Am. Publ'g, Inc.*, 971 F.2d 302 (9th Cir. 1992)                     6

*Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995)   5

*Petroliam Nasional Berhad v. Godaddy.com, Inc.*, 737 F.3d 546 (9th Cir. 2013)   12, 17

*Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190 (9th Cir. 2012)   13

*Schreiber v. Dunabin*, 938 F. Supp. 2d 587 (E.D. Va. 2013)   7, 12

*Size, Inc. v. Network Solutions, Inc.*, 255 F. Supp. 2d 568 (E.D. Va. 2003)   7

*Solid Host, NL v. NameCheap, Inc.*, 652 F. Supp. 2d. 1092 (C.D. Cal. 2009)   11, 13, 14, 15, 16

*Tillery v. Leonard & Sciolla, LLP*, 437 F. Supp. 2d 312 (E.D. Pa. 2006)   9

*Verizon California, Inc. v. OnlineNIC, Inc.*, 647 F. Supp. 2d 111   11
    (N.D. Cal. 2009)

**STATUTES**

15 U.S.C. § 1114   11, 12

15 U.S.C. § 1117   1, 2, 3, 18, 19, 22

15 U.S.C. § 1125   6, 11, 12, 13, 14, 15, 17

**RULES**

Civ. L.R. 54-5   18, 19

Fed. R. Civ. P. 12   1, 5

**MISCELLANEOUS**

4 McCarthy on Trademarks and Unfair Competition § 25:73.40 (4th ed. 2010)   11

### NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 12(b)(6) and 15 U.S.C. § 1117, on August 7, 2014, at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom C of the United States Courthouse (450 Golden Gate Avenue, 15th Floor, San Francisco, CA 94102), before United States Magistrate Judge Laurel Beeler, Defendant TLDS, L.L.C. ("TLDS") will and hereby does move for dismissal of the complaint against it and for an order finding that Plaintiff Jeffrey Wilens, d/b/a Lakeshore Law Center ("Plaintiff") is liable for attorneys' fees.

In support of this motion, TLDS submits:

1.     Plaintiff's contributory trademark infringement (Count One) must be dismissed because:

(a)     Well-settled, controlling case law mandates dismissal of the infringement claim because as a domain name registrar, TLDS did not use the domain name at issue in commerce as a trademark, and

(b)     well-established case law also compels dismissal of Plaintiff's contributory trademark infringement claim, because domain name registrars do not have the requisite level of control and monitoring of the allegedly infringing domain names, and do not have the requisite knowledge of infringement – a trademark owner's assertion of infringement is not sufficient to impute knowledge of infringement to the domain name registrar, and

(c)     the allegations in the Complaint establish as a matter of law that the operator of the website resolving from the referenced domain name is not committing trademark infringement, as the use is *per se* non-commercial.

2.      Plaintiff's claim under the Anticybersquatting Consumer Protection Act ("ACPA") (Count Two) must be dismissed because:

(a)      The claim is barred by a safe harbor provision within the ACPA itself, and

(b)      Plaintiff does not allege, nor can he allege, any facts supporting his bald conclusion that TLDS "registered, trafficked in, or used" the domain name at issue, and, in fact, the facts alleged demonstrate otherwise, and

(c)      The facts in the Complaint do not support the legal conclusion that TLDS had a "bad faith intent to profit" from the goodwill associated with Plaintiff's purported trademark, and

(d)      Claims against domain name registrars for contributory cybersquatting – which in fact is what the Plaintiff is seeking to allege in Count Two of the Complaint – are not cognizable under controlling authority.

3.      Plaintiff should be held liable for attorneys' fees because this is an exceptional case pursuant to the Lanham Act, 15 U.S.C. § 1117.  Plaintiff's claims are manifestly and objectively groundless, and Plaintiff's bringing and maintaining this action are unreasonable and in bad faith.

4.      This motion is based on the following Memorandum of Points and Authorities, the Declaration of Timothy B. Hyland and attached exhibits in Support of Defendant's Motion to Dismiss and for an Order Finding Plaintiff Liable for Attorneys' Fees; all other pleadings and matters of record; and such additional argument as may be presented at the hearing. A proposed form of order is submitted herewith.

The two claims brought by Plaintiff, Jeffrey Wilens, d/b/a Lakeshore Law Center ("Plaintiff"), are groundless and fatally flawed for multiple reasons. The Complaint is based

Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Defendant TLDS, L.L.C.'s Motion to Dismiss and for an Order Finding Plaintiff Liable for Fees

-2-

solely upon unsupported legal conclusions, incomplete claims, and discredited legal theories. Plaintiff's actions are particularly suspect because, if the allegations in the Complaint are to be believed, Plaintiff is a trademark owner concerned about misuse of his purported trademark on the Internet. However, instead of filing an administrative action against the individual who registered the allegedly infringing domain name (or an *in rem* proceeding in court if he does not know the identity of the registrant), Plaintiff brought this action, with claims for contributory trademark infringement and cybersquatting against an inappropriate defendant: domain name registrar TLDS, L.L.C. ("TLDS"). Even a cursory review of the relevant statutes and case law would have revealed to Plaintiff that TLDS cannot be held liable for such claims.

Plaintiff is aware of the authorities that render his claims against TLDS untenable. Yet he persisted in filing this action, and then refused to dismiss TLDS when TLDS advised him of the existence of the law that bars his claims. Plaintiff's Complaint is baseless and his conduct unreasonable at best; at worst the litigation is vexatious and pursued in bad faith. Any one of these factors translates to an "exceptional case" under the Lanham Act, triggering liability for attorneys' fees.

For these reasons and those stated in detail below, Plaintiff's Complaint should be dismissed and TLDS should be awarded its attorneys' fees under 15 U.S.C. 1117(a)(3) for having to defend this baseless action.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

### A.   Factual Allegations

The facts in this case with respect to TLDS are simple. According to the allegations in the Complaint, a third party (the "Registrant") registered the domain name <jeffreywilens.com> (the

"Domain Name") and created a website linked to the Domain Name. Plaintiff claims that the domain name registration and the website violate his rights in what he refers to as an applied-for trademark in his personal name. *See* Compl. ¶¶ 10, 17.[1]

Plaintiff alleges that TLDS was the registrar that the third-party Registrant used to register the domain name. *See id.* ¶ 17. Plaintiff does not allege any other connection between TLDS and the Domain Name or the website at issue.

In addition, the website that resolves from the Domain Name is a classic "criticism site." *See* Hyland Decl., ¶ 3, Ex. 3. It makes statements that are without a doubt insulting to Plaintiff, and call into question his abilities and ethics as an attorney and his personal characteristics – often using rhetorical hyperbole and histrionic language. But the website does not offer for sale any product or service or contain paid advertisements from any other commercial entity. Its sole purpose appears to be to criticize Plaintiff.

### B.    Procedural History

Plaintiff filed the Complaint on May 25, 2014.  TLDS was served with a Summons and copy of the Complaint on June 2, 2014.  This Motion to Dismiss is being filed within 21 days after service of process was effected on TLDS.

## II.    LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v.*

---

[1]  Plaintiff alleges that his trademarks are common law trademarks, for which he has filed registration applications with the United States Patent and Trademark Office ("USPTO"). Compl. ¶ 10. Plaintiff neglects to reveal that before he filed the Complaint, the United States Patent and Trademark Office refused both of the trademark applications referenced and relied upon in the Complaint.  *See* Declaration of Timothy B. Hyland ("Hyland Decl."), ¶ 2, Ex. 1 and 2. The Court need not consider this in connection with the motion to dismiss; however, it is pertinent to consideration of whether this action was commenced and maintained in bad faith.

*Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In addition to considering the mere allegations of fact in a complaint, in considering a motion to dismiss, a court may consider documents attached to the complaint. *Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted). Further, under the "incorporation by reference" doctrine, a court may take into account documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 986 (9th Cir. 1999)). "The rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material." *Id.* Therefore, where the Complaint references a website, the court may properly consider the contents of that website in reviewing a motion to dismiss.

## III.   ARGUMENT

In his Complaint, Plaintiff asserts two claims for relief, both of which are barred, preempted, or have otherwise been determined to be inapplicable to domain name registrars:

Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Defendant TLDS, L.L.C.'s Motion to Dismiss and for an Order Finding Plaintiff Liable for Fees

-5-

(1)   Trademark infringement or contributory trademark infringement under 15 U.S.C. § 1125(a)(1); and

(2)   Cybersquatting or contributory cybersquatting under 15 U.S.C. § 1125(d).

### A.   It is well-established that a claim for contributory trademark infringement (Count One in the Complaint) cannot be maintained against a domain name registrar.

Ninth Circuit case law has established that registrars like TLDS are not liable to trademark owners for contributory trademark infringement.

It appears from the Complaint that the Plaintiff seeks to state a claim against TLDS for contributory trademark infringement.  *See* Compl. ¶ 23 ("Each of the Defendants is aware their [sic] actions were and are contributing to the trademark infringements . . .").  However, such claims are clearly and unequivocally barred by controlling law.

In *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980 (9th Cir. 1999), the Ninth Circuit affirmed the District Court's decision granting summary judgment to a domain name registrar on a trademark owner's direct infringement claims and contributory infringement claims. In *Lockheed* the District Court held that the registrar defendant could not be held liable for direct trademark infringement under the Lanham Act. *See Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 958 (C.D. Cal. 1997), *aff'd*, 194 F.3d 980 (9th Cir. 1999). The Court recognized that "something more than the registration of the name is required before the use of a domain name is infringing," and the registrar's "merely us[ing] domain names to designate host computers on the Internet" is "the type of purely 'nominative' function that is not prohibited by trademark law." *See id.* at 957 (citing *New Kids on the Block v. New Am. Publ'g, Inc.*, 971 F.2d 302, 307 (9th Cir. 1992)). Courts have continued to uphold and apply the *Lockheed* Court's reasoning and conclusions in trademark cases concerning passive registrars.

Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Defendant TLDS, L.L.C.'s Motion to Dismiss and for an Order Finding Plaintiff Liable for Fees

-6-

*See, e.g.*, *Bird v. Parsons*, 289 F.3d 865, 878 (6th Cir. 2002) (discussing *Lockheed* with approval and adding: "A registrar that grants a particular domain name to a registrant simply grants it an address. . . . The fact that the registrant can then use its domain name to infringe on the rights of a registered trademark owner does not subject the registrar to liability for trademark infringement or unfair competition."); *Size, Inc. v. Network Solutions, Inc.*, 255 F. Supp. 2d 568, 573 (E.D. Va. 2003) (discussing *Lockheed* and granting defendant registrar's motion to dismiss); *Schreiber v. Dunabin*, 938 F. Supp. 2d 587, 600 (E.D. Va. 2013) (quoting *Am. Online, Inc. v. Huang*, 106 F. Supp. 2d 848, 854 (E.D. Va. 2000)) ("[f]or domain name disputes based on federal or common law trademark infringement or dilution, the relevant tortious act is the *use* of the domain name, and not the act of registration. Consequently, because registrars do not 'use' marks in commerce, they are not subject to liability.).

Here, TLDS is alleged to have provided the exact same function as the registrar in *Lockheed*, *Bird*, *Size*, and *Schreiber*. Therefore, any "use" of the Domain Name in the course of providing the domain name routing function is not trademark use of Plaintiff's alleged mark, and TLDS is likewise not liable for trademark infringement.

The *Lockheed* Court further declined to extend the framework for contributory trademark infringement to a registrar's domain name registration activities. *Lockheed*, 194 F.3d 980. The Court held that "[the registrar] does not supply a product or engage in the kind of direct control and monitoring required to extend the *Inwood Lab.* [contributory infringement] rule." *See id.* at 986. The District Court explained that the domain name registrar's "involvement with potentially infringing uses of domain names [wa]s remote," and therefore held it was "inappropriate to extend contributory liability to [the registrar] absent a showing that [it] had unequivocal knowledge that a domain name was being used to infringe a trademark." *See Lockheed*, 985 F.

Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Defendant TLDS,
L.L.C.'s Motion to Dismiss and for an Order Finding Plaintiff Liable for Fees

-7-

Supp. at 962. The Court was clear that assertions from the trademark owner alone were not sufficient to trigger the level of knowledge required to sustain a contributory infringement claim. *See id*. at 963. ("The mere assertion by a trademark owner that a domain name infringes its mark is not sufficient to impute knowledge of infringement to [the registrar].") Because trademark infringement requires a multi-faceted and dynamic analysis, taking into consideration the strength of the mark, the goods and services used in connection with the mark, and other similar marks that exist, the Court reasoned that "the outcome of the [likelihood of confusion] test [for trademark infringement] cannot be predicted from an examination of the mark and the domain name." *Id*. at 963. Further, "[a] reasonable person in [the registrar's] position could not presume infringement even where the domain name is identical to a mark and registered for use in connection with a similar or identical purpose." *Id.*

In this case, Plaintiff alleges that TLDS occupied the identical role as the defendant registrar in *Lockheed*, namely, providing a mere automated domain name routing function to the Registrant. TLDS was therefore equally "remote" from the purported infringing use of the mark, and the same level of unequivocal knowledge would be required to establish contributory infringement. However, the only "knowledge" alleged in the Complaint was a mere assertion from the trademark owner that infringement was occurring at the website associated with the Domain Name. *See* Complaint ¶ 23. *Lockheed* is clear that such assertions do not amount to knowledge of infringement, and thus Plaintiff's allegations cannot support contributory infringement claims against TLDS. *See Lockheed*, 985 F. Supp. at 963-64.

//

//

//

Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Defendant TLDS, L.L.C.'s Motion to Dismiss and for an Order Finding Plaintiff Liable for Fees

-8-

**B.** **In any event, Plaintiff has not alleged facts establishing trademark infringement and, in fact, the Complaint establishes the non-existence of trademark infringement with respect to the Domain Name.**

Yet, this Court need not even address whether TLDS can be liable for contributory trademark infringement, because Plaintiff's own Complaint demonstrates that there was no trademark infringement in the first instance.[2] The website that resolves from the Domain Name demonstrates that the use of Plaintiff's name in the Domain Name is not infringing.  The Ninth Circuit's holding in *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005) is dispositive in this regard.

In *Bosley*, Kremer, a dissatisfied customer of Bosley, registered the domain name <bosleymedical.com>, "which, to put it mildly, was uncomplimentary of the Bosley Medical Institute." *Id*. at 674. The website did not offer for sale any product or service or contain paid advertisements from any other commercial entity. *Id*. at 678.  It simply criticized Bosley's services. Bosley, however, was the owner of a federally-registered trademark for the term "Bosley Medical," and therefore sued Kremer, claiming, *inter alia*, that Kremer was infringing its trademark. The Court of Appeals stated that to constitute trademark infringement under the Lanham Act, "Kremer's use of Bosley Medical as his domain name [must have been] 'in connection with a sale of goods or services.' If it was not, then Kremer's use was 'noncommercial' and did not violate the Lanham Act." *Id*. at 677 (citing 15 U.S.C. § 1127).

The Ninth Circuit held that Kremer's use in a domain name of Bosley's trademark, for

---

[2] For purposes of this Motion, TLDS will not question that Plaintiff has some sort of common-law trademark in his personal name – a questionable proposition at best.  *See, e.g., Tillery v. Leonard & Sciolla, LLP*, 437 F. Supp. 2d 312, 321 (E.D. Pa. 2006) (holding that personal names may be trademarked only upon a showing of distinctiveness and secondary meaning; and that use of lawyer's surname in a law firm's name does not demonstrate such distinctiveness and secondary meaning).

purposes of a criticism website, did not constitute a violation of the Lanham Act and was not

trademark infringement:

> Kremer is not Bosley's competitor; he is their critic. His use of the Bosley mark is not in connection with a sale of goods or services— it is in connection with the expression of his opinion *about* Bosley's goods and services.

> The dangers that the Lanham Act was designed to address are simply not at issue in this case. The Lanham Act, expressly enacted to be applied in commercial contexts, does not prohibit all unauthorized uses of a trademark. Kremer's use of the Bosley Medical mark simply cannot mislead consumers into buying a competing product—no customer will mistakenly purchase a hair replacement service from Kremer under the belief that the service is being offered by Bosley. Neither is Kremer capitalizing on the good will Bosley has created in its mark. Any harm to Bosley arises not from a competitor's sale of a similar product under Bosley's mark, but from Kremer's criticism of their services. Bosley cannot use the Lanham Act either as a shield from Kremer's criticism, or as a sword to shut Kremer up.

*Id*. at 679-80.  As the Court succinctly stated, "the noncommercial use of a trademark as the

domain name of a website—the subject of which is consumer commentary about the products

and services represented by the mark—does not constitute infringement under the Lanham Act."

*Id*. at 674.

The registrant of the Domain Name in the instant case is a critic of Plaintiff. The

registrant's use of the Plaintiff's name is not in connection with the sale of goods or services – it

is used in connection with criticism of Plaintiff. No customer possibly could be deceived into

believing that the registrant of the Domain Name is selling legal services, nor could any

customer possibly buy legal services from the registrant, as they are not being offered.  As in

*Bosley*, any harm to Plaintiff arises not from a competitor's sale of goods or services – it arises

from the website's criticism of Plaintiff's services.  This is not trademark infringement. And, *a*

*priori*, TLDS cannot be liable for contributory infringement when there is no infringement in the first place.

### C.    TLDS is immune from an action under the ACPA (Count Two) under that Act's safe harbor provision.

In Count Two of the Complaint, Plaintiff seeks to bring a cybersquatting claim under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). However, the law quite clearly provides domain name registrars, like TLDS, with a clear "safe harbor from liability for registering an infringing domain name." 4 McCarthy on Trademarks and Unfair Competition § 25:73.40 (4th ed. 2010). Cases interpreting the ACPA safe harbor provision (found at 15 U.S.C. § 1114(2)(D))[3] uniformly have held that this language shields passive registrars – those who merely register domain names – from liability under the ACPA: "[The] ACPA safe harbor provision . . . exempts a domain name registrar from liability resulting from its registration of domain names for others where the registrar is acting in a purely passive capacity." *Verizon California, Inc. v. OnlineNIC, Inc.*, 647 F. Supp. 2d 1110, 1126 (N.D. Cal. 2009) (citing 15 U.S.C. § 1114(2)(D)(iii)); *see also Solid Host, NL v. NameCheap, Inc.*, 652 F. Supp. 2d 1092, 1104-05 (C.D. Cal. 2009) ("[A] registrar is not liable under § 1125(d) *when it acts [as] a registrar*, i.e., when it accepts registrations for domain names from customers") (emphasis in original, citing *Lockheed Martin Corp. v. Network Solutions, Inc.*, 141 F. Supp. 2d 648, 654-55 (N.D. Tex. 2001) (often referred to as "*Lockheed II*") (granting summary judgment for the domain name registrar defendant and stating: "It is quite understandable that Congress did not cause defendant as a domain name registrar . . . to be subject to civil liability under § 1125(d).")).

---

[3] Section 1114(2)(D)(iii) states: "A domain name registrar, a domain name registry, or other domain name registration authority shall not be liable for damages under this section for the registration or maintenance of a domain name for another absent a showing of bad faith intent to profit from such registration or maintenance of the domain name."

Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Defendant TLDS, L.L.C.'s Motion to Dismiss and for an Order Finding Plaintiff Liable for Fees

-11-

*See also*, *Schreiber v. Dunabin*, 938 F. Supp. 2d 587, 601 (E.D. Va. 2013) ("Without such [safe harbor] limitation of liability, all registrars would potentially have been exposed to the offense of cybersquatting because they register and traffic in domain names that could be infringing or diluting trademarks protected by the Lanham Act") (quoting *Hawes v. Network Solutions, Inc.*, 337 F.3d 377, 384 (4th Cir. 2003)).

The Ninth Circuit recently examined the legislative history of the safe harbor provisions in the ACPA, noting "that Section 1114(2)(D)(iii) was intended to codify the protection that we granted registrars in *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 984–985 (9th Cir. 1999)." *Petroliam Nasional Berhad v. Godaddy.com, Inc.*, 737 F.3d 546, 541 (9th Cir. 2013). Simply put, "Where domain names are used to infringe, the infringement does not result from [the registrar's] publication of the domain name list, but from the registrant's use of the name on a web site or other Internet form of communication in connection with goods or services . . . . [the registrar's involvement with the use of domain names does not extend beyond registration." *Lockheed*, 194 F.3d at 985 (citing *Lockheed*, 985 F. Supp. at 958.)

Here, Plaintiff does not allege, nor can he allege, that TLDS acted as anything other than a registrar with respect to the registration of <jeffreywilens.com>. Therefore, the safe harbor provision bars any action under the ACPA by Plaintiff against TLDS.

### D.  Even were TLDS not immune, the Complaint contains no facts setting forth a claim under the ACPA.

Even if Plaintiff's ACPA claim were not clearly barred by the ACPA safe harbor for registrars (15 U.S.C. § 1114(2)(D)(iii)), the claim must be dismissed for failure to state a claim against TLDS. The ACPA requires allegations that a defendant "registers, traffics in, or uses" a domain name with "bad faith intent to profit." 15 U.S.C. § 1125(d)(1)(A)(i)-(ii). *See, e.g.,*

*Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1219 (9th Cir. 2012) (describing elements of an ACPA claim); *Bird v. Parsons*, 289 F.3d 865, 880 (6th Cir. 2002) (same); *Lockheed II*, 141 F. Supp. 2d at 653-54 (same); *Solid Host*, 652 F. Supp. 2d at 1100-01 (same). Plaintiff has not alleged such facts, except in conclusory terms,[4] and well-established case law is clear that Plaintiff cannot legitimately allege such facts against a passive registrar.

### 1.   Plaintiff has not alleged facts supporting a conclusion that TLDS "registered, trafficked in, or used" the Domain Name.

Only a registrant can "register" a domain name under the ACPA. "The word 'registers,' when considered in context, obviously refers to a person who presents a domain name for registration, not to the registrar." *Lockheed II*, 141 F. Supp. 2d at 655; *see also Bird*, 289 F.3d at 881 (only the registrant "registers" the domain name within the meaning of the ACPA). Plaintiff does not allege that TLDS is the registrant of the Domain Name, and in fact makes clear in the Complaint that the Registrant is "Doe No. 1". *See* Compl. ¶ 21.

Similarly, only the registrant or the registrant's authorized licensee can "use" a domain name under the plain language of the statute: "[a] person shall be liable for using a domain name . . . only if that person is the domain name registrant or the registrant's authorized licensee." 15 U.S.C. § 1125(d)(1)(D). *See also Lockheed II*, 141 F. Supp. 2d at 655 ("Section 1125(d)(1)(D) expressly limits the 'uses' feature to the domain name registrant or the registrant's authorized licensee"). Plaintiff does not allege (nor could he allege) that TLDS is the domain name

---

[4] To be sure, Plaintiff alleges conclusions merely parroting the language set forth in the statute: "Defendants registered, trafficked in and used domain names incorporating the personal and business names of Plaintiff . . .". Compl. ¶ 28.  However, these conclusory allegations are insufficient to sustain a claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

registrant or the authorized licensee of the registrant. Without such allegations, Plaintiff cannot sustain an ACPA claim based on "use" of the Domain Name. *See Bird*, 289 F.3d at 881 (holding that plaintiff failed to state an ACPA claim based on "use" of a domain name because there was no allegation that defendant was the domain name registrant's authorized licensee).

There are also no allegations supporting a conclusion that TLDS "trafficked in" the Domain Name. The ACPA defines "trafficking in" a domain name as: "transactions that include, but are not limited to sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration." 15 U.S.C. § 1125(d)(1)(E). Plaintiff does not allege that TLDS participated in any such conduct, or any other conduct that could be construed as "trafficking in" the domain name. Indeed, a passive registrar – like TLDS in this action – has clearly been held to be outside the definition of "trafficking in" domain names under the ACPA: "A registrar that processes domain name registration applications does not register or traffic in domain names as those terms are used in this statute [the ACPA]." *Solid Host*, 652 F. Supp. 2d at 1105. *See also Lockheed II*, 141 F. Supp. 2d at 655; *Bird*, 289 F.3d at 881.

### 2.    Plaintiff has not alleged that TLDS had a "bad faith intent to profit" from the Domain Name.

Plaintiff's sole allegation concerning "bad faith intent to profit" is the rote legal conclusion stated in paragraph 28 of the Complaint: "Defendants registered, trafficked in and used domain names[5] incorporating the personal and business names of Plaintiff, which are

---

[5] Plaintiff's use of the plural term "domain names" is puzzling, as the only domain name referenced in the Complaint is the Domain Name - <jeffreywilens.com>. The remaining addresses discussed in the Complaint (at ¶ 19) are third level domains, not domain names. *See Name.Space, Inc. v. Network Solutions, Inc.*, 202 F.3d 573, 578 (2d Cir. 2000) (describing the difference between a top level domain, a second level domain ("a domain name") and a third

distinctive marks, and with bad faith intent to profit from those marks." *See* Compl. ¶ 28. Plaintiff then discusses, in paragraph 29 of the Complaint, a litany of reasons why he believes that "Defendants" used his purported trademarks in bad faith – but not with "bad faith intent to profit." Not one of these reasons, however, relates to TLDS. Plaintiff also asserts, in paragraph 23, that TLDS is somehow liable because Plaintiff purportedly gave it notice of the alleged "trademark infringement" and TLDS (and the other defendants) advised him that they would not take any action absent a court order. But "bad faith" is not an element of an ACPA claim; "bad faith intent to profit" is. *See* 15 U.S.C. § 1125(d)(1)(A)(i); *see also Solid Host*, 652 F. Supp. 2d at 1110 ("[B]ad faith intent to profit is a term of art with a specific legal meaning under the ACPA. . . . the statute was not meant to prohibit actions outside its scope simply because they were undertaken in 'bad faith.'") (citations omitted).

Plaintiff does not allege any facts intended to support a claim that TLDS acted with bad faith intent to profit. In fact, accepting the allegations regarding TLDS's conduct as true, TLDS's actions as described in the Complaint were in accordance with the well-established legal framework for domain name disputes. According to Plaintiff, in response to his correspondence, TLDS advised him that it would comply with a court order relating to the Domain Name. Compl. ¶ 23. Instead of bringing an administrative action against the registrant under the Uniform Domain Name Dispute Resolution Policy ("UDRP"), or commencing an in rem proceeding against the Domain Name – as required by the ACPA – Plaintiff commenced this action.

---

level domain). Third level domains are not domain names subject to the ACPA. *GoForIt Enter., LLC v. DigiMedia.com L.P.*, 750 F. Supp. 2d 712, 725 (N.D. Tex 2010) ("Because third level domains . . . are not 'registered with or assigned by any domain name registrar,' a straightforward reading of the text shows that [the plaintiff] cannot recover under the ACPA for defendants' use of [its trademark] in a third level domain."). In any event, TLDS has no involvement, and the Plaintiff does not allege that it has involvement, with third-level domains.

The mere operation of TLDS's domain name registration service does not qualify as a sufficient "intent to profit." *See Solid Host*, 652 F. Supp. 2d at 1110 (dismissing ACPA claim because plaintiff failed to allege the element of a bad faith intent to profit when "[t]he only intent to profit alleged is linked to [the registrar's] operation and promotion" of its service, rather than allegations supporting an "inten[t] to profit from the goodwill associated with [plaintiff's] trademarks."). Therefore, Plaintiff's ACPA claim could be dismissed on this ground alone.

There are multiple legal channels available to a person aggrieved by another's use of his or her trademark – but complaining to the domain name registrar is not one of them. Registrars are not charged with the duty to resolve trademark infringement and dilution disputes, nor should they be:

> Sheer volume alone would prohibit [a registrar] performing the [dispute resolution] role plaintiff would assign. Defendant simply could not function as a registrar . . . if it had to become entangled in, and bear the expense of, disputes regarding the right of a registrant to use a particular domain name. The fact that defendant could theoretically [resolve disputes] does not mean that defendant is obligated to do so at the risk of financial ruin. The reason the UDRP [the Uniform Domain Name Dispute Resolution Procedure] was developed was to provide the mechanism to resolve these disputes. Not only would imposing plaintiff's scheme [to obligate the registrar to resolve disputes] render the UDRP nugatory, it would cause the domain name registration system in its entirety not to be feasible.

*Lockheed II*, 141 F. Supp 2d. at 655.

Because Plaintiff fails to plead any facts to establish that TLDS had bad faith intent to profit, or that TLDS registered, trafficked in, or used the Domain Name under the ACPA, Plaintiff has failed to state a claim against TLDS for cybersquatting.

//

//

Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Defendant TLDS, L.L.C.'s Motion to Dismiss and for an Order Finding Plaintiff Liable for Fees

-16-

**3.** **To the extent Plaintiff intended to bring a claim for contributory cybersquatting, no such claim is cognizable at law.**

While it appears from the Complaint that Plaintiff seeks to bring a direct cybersquatting claim under the ACPA against TLDS, to the extent it was his intent to state a claim for contributory cybersquatting, the Ninth Circuit has held that no such cause of action exists. *Petroliam Nasional Berhad v. Godaddy.com, Inc.*, 737 F.3d 546, 550 (9th Cir. 2013) ("We hold that the ACPA does not include a cause of action for contributory cybersquatting because: (1) the text of the Act does not apply to the conduct that would be actionable under such a theory; (2) Congress did not intend to implicitly include common law doctrines applicable to trademark infringement because the ACPA created a new cause of action that is distinct from traditional trademark remedies; and (3) allowing suits against registrars for contributory cybersquatting would not advance the goals of the statute.").

## IV.   THE COURT SHOULD ORDER PLAINTIFF TO REIMBURSE TLDS FOR ITS ATTORNEYS' FEES AND COSTS

### A.   INTRODUCTION

Plaintiff filed this action knowing that it had no basis in law or fact. Regardless, Plaintiff named TLDS, and others, because the correct party – to the extent there is one – is a foreign individual and therefore would have been more difficult to pursue.[6] Informed of the impropriety of this action, Plaintiff nevertheless continued prosecuting the action.

For this reason and the reasons stated below, Plaintiff's litigation was and is groundless, unreasonable, vexatious, and pursued in bad faith. As only one of these factors is necessary to

---

[6]   Not much more difficult, though. Plaintiff could simply have brought a UDRP proceeding, an *in rem* action against the Domain Name pursuant to 15 U.S.C. § 1125(d)(2)(A), or both.

substantiate a claim for attorneys' fees under the Lanham Act, Plaintiff should be required to pay TLDS its costs and reasonable attorneys' fees in defending the action.

**B.     LEGAL STANDARD**

Under the Lanham Act, a prevailing party may be awarded attorney's fees in "exceptional cases." 15 U.S.C. § 1117(a)(3). Attorneys' fees are available "to prevailing defendants as well as prevailing plaintiffs . . . ." *Guichard v. Universal City Studios*, L.L.L.P., 2008 WL 2220434, at *2 (N.D. Cal. May 7, 2008) (upholding an attorney's fee award where "[p]laintiff's litigation was groundless and unreasonable"). "[T]his requirement [exceptional circumstances] is met when the case is either 'groundless, unreasonable, vexatious, or pursued in bad faith.'" *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1156 (9th Cir. 2002) (citing *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 881 (9th Cir. 1999)). The Federal Rules of Civil Procedure allow a Court to determine liability for attorneys' fees first, before considering the amount of the award. *See* Fed. R. Civ. P. 54(d)(2)(C) ("The court may decide issues of liability for fees before receiving submissions on the value of services.").

To the extent applicable, Local Rule 54-5 requires that the parties confer prior to the filing of a motion for attorneys' fees. *See* Civ. L.R. 54-5. On June 4, 2014, counsel for TLDS contacted Plaintiff to advise him that TLDS was not a proper party to the claims, and cited Plaintiff to the relevant case law and statutes that so provide.  Hyland Decl. ¶ 4. Plaintiff's response was only to reiterate -- repeatedly -- his demand that TLDS transfer the Domain Name to him.  Hyland Decl. ¶ 5. TLDS's counsel advised Plaintiff that if TLDS was required to substantively defend the case, it would seek to recover its fees, as Plaintiff's claims are neither well-grounded in fact nor supported by law. Hyland Decl. ¶ 6. Plaintiff's response was to state, in an elevated tone of voice, words to the effect that as an experienced attorney he would not be

intimidated by such "threats." Hyland Decl. ¶ 6. Plaintiff's tone and refusal to consider the applicable law made, and make, it unnecessary and futile to engage in further discussions.[7]

## C.   ARGUMENT

In the event the Court grants TLDS's motion to dismiss, filed contemporaneously with this motion for an order finding liability for attorneys' fees, all of the claims in the action will be resolved in TLDS's favor. TLDS will then be the prevailing party in the action.

As the prevailing party, TLDS could be entitled to reasonable attorneys' fees and costs related to defense of the action if the "exceptional circumstances" apply: namely, if Plaintiff's litigation was groundless, unreasonable, vexatious, *or* pursued in bad faith. In this case, all four factors apply, so the Court should exercise its discretion to award attorneys' fees to TLDS under 15 U.S.C. § 1117(a)(3).

### 1.   Plaintiff's claims are groundless and Plaintiff's conduct unreasonable.

Both of Plaintiff's claims against TLDS in this action are groundless.[8]

Regarding Plaintiff's trademark infringement and dilution claims: (1) Well-settled, controlling case law mandates dismissal of the direct infringement and dilution claims because a domain name registrar does not use the Domain Name in commerce as a trademark, (2) well-established case law also compels dismissal of Plaintiff's contributory trademark claim, because domain name registrars do not have the requisite level of control and monitoring of the allegedly infringing domain names, and do not have the requisite knowledge of infringement – a trademark

---

[7]   Before filing its next motion regarding the amount of attorneys' fees to be awarded, TLDS will initiate a second conference with counsel for Plaintiff. TLDS is also mindful of the evidentiary requirements of Local Rule 54-5, and will provide the necessary declarations and documentation with the motion.

[8]   For a thorough explanation of the groundlessness of Plaintiff's claims, *see* Argument in Section III, *supra*.

owner's assertion of infringement is not sufficient to impute knowledge of infringement to the domain name registrar. Further, under *Bosley*, *supra*, it is unquestionable that there is no trademark infringement present here in any event. Moreover, Plaintiff alleges that he filed trademark applications for the purported marks – all while failing to mention that – before he filed the Complaint – the United States Patent and Trademark Office refused his applications.

Regarding Plaintiff's cybersquatting claim, (1) The claim is barred by a safe harbor provision within the statute itself, (2) Plaintiff failed to include factual allegations to support the bald legal conclusions that TLDS "register[ed], traffic[ked] in, or use[d]" the Domain Name, (3) the facts in the Complaint do not support the legal conclusion that TLDS had a "bad faith intent to profit" from the goodwill associated with Plaintiff's purported trademark, (4) other than an unsupported legal conclusion, Plaintiff merely alleged, inadequately, that TLDS's conduct displayed "bad faith," not the required "bad faith intent to profit" from the goodwill associated with a trademark, and (5) to the extent that Plaintiff intended to state a claim for contributory cybersquatting, binding authority holds that no such claim is cognizable.

Courts have awarded attorneys' fees to defendants in Lanham Act cases with only a fraction of the flaws in this case. Indeed, Courts have awarded attorneys' fees to defendants with only a fraction of this Plaintiff's particular deficiencies to support a determination of "groundlessness." In *D.S.P.T. Int'l, Inc. v. Nahum*, 2008 WL 754803, at *3 (C.D. Cal. March 17, 2008), the plaintiff brought a cybersquatting claim under the ACPA, and alleged that the defendant "used" the domain name under the act. The defendant was not, however, the registrant or the registrant's licensee, and therefore could not be held liable for 'use' of a domain name pursuant to a clear definition in the statute. *See id.* ("Notwithstanding the statute's directive that 'only' the registrant and his or her authorized licensee may be held liable for "use" of a domain

name, [plaintiff] pursued this claim against [defendant], who was neither the registrant of the domain name nor a licensee."). Because of this deficiency – which is present in this action as well – the Court held that the cybersquatting claim was "groundless" and specious," and awarded attorneys' fees to defendant. *See id.*

In this action, Plaintiff is maintaining – with knowledge that the statutes and case law plainly provide that he has no case – groundless Lanham Act claims. Plaintiff knew of the speciousness of the claims at least as early as June 4, 2014, when advised of the same by TLDS's counsel. *See* Hyland Decl. ¶ 4. As a lawyer, the Plaintiff had the ability to conduct legal research regarding the feasibility of his claims, but evidently declined to do so. Plaintiff knew or should have known that there was no chance of success on the merits before filing the case, as Plaintiff's allegations, though insufficient, did contain some "buzz words" from relevant cases on the topic. Either way, Plaintiff's conduct in filing or maintaining this action with the knowledge – actual or imputed – that it was groundless was unreasonable, and subjects Plaintiff to liability for attorneys' fees under the Lanham Act.

### 2. Plaintiff's action is vexatious and pursued in bad faith.

Vexatious litigation constitutes an "exceptional case" under the Lanham Act when a plaintiff's unreasonable claims or behavior "vexatiously multiply the proceedings." *See Designing Health, Inc. v. Erasmus*, 2003 WL 25902463, at *19 (C.D. Cal. May 1, 2003) (holding that the plaintiffs unreasonably and vexatiously multiplied the proceedings by maintaining trademark claims when there was no evidence to support them).

Here, Plaintiff's very decision to bring the action was vexatious and pursued in bad faith. Plaintiff could have sought relief from the Registrant directly or through an administrative action pursuant to the UDRP, as TLDS advised Plaintiff to do before it was forced to file this Motion.

*See* Hyland Decl. ¶ 5. Instead of employing this quick and inexpensive method of acquiring the Domain Name (assuming that he is indeed the victim of cybersquatting) and stopping the alleged infringement, Plaintiff filed and maintained this baseless action against an improper party. This suggests that Plaintiff was and is seeking to strong-arm TLDS into a settlement with the threat of over-litigation of Plaintiff's baseless claims.

As a result of Plaintiff's bad faith pursuit of baseless litigation against TLDS, attorneys' fees under section 1117 should be awarded to TLDS.

## V.   CONCLUSION

For the reasons stated above, TLDS's Motion to Dismiss should be granted and Plaintiff's Complaint should be dismissed. TLDS's Motion for an Order Finding Plaintiff Liable for Attorneys' Fees should also be granted. When the motion regarding liability for attorneys' fees is granted, TLDS will file a second motion with declarations and evidence to support the amount of attorneys' fees.

Dated:  June 17, 2014                          Respectfully submitted,

By: _/s/  Val D. Hornstein_____
Val D. Hornstein
HORNSTEIN LAW OFFICES, PROF. CORP.

By: _/s/  Timothy B. Hyland_____
Timothy B. Hyland (*pro hac vice* pending)
HYLAND LAW PLLC

Attorneys for Defendant TLDS, L.L.C.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I certify that all counsel of record are being served on June 17, 2014 with a copy of this document via the Court's CM/ECF system.

 /s/  Matthew R. Harrison

Matthew R. Harrison

Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Defendant TLDS, L.L.C.'s Motion to Dismiss and for an Order Finding Plaintiff Liable for Fees

-23-