**LAKESHORE LAW CENTER**
**Jeffrey Wilens, Esq. (State Bar No. 120371)**
**18340 Yorba Linda Blvd., Suite 107-610**
**Yorba Linda, CA 92886**
**714-854-7205**
**714-854-7206 (fax)**
**jeff@lakeshorelaw.org**

**Attorney and Plaintiff in Pro Se**

## UNITED STATES DISTRICT COURT,

## NORTHERN DISTRICT OF CALIFORNIA,

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JEFFREY WILENS DBA LAKESHORE LAW CENTER, | ) Case No. CV-14-02419-LB |
| | ) Complaint filed May 25, 2014 |
| | ) Trial Date: |
| | ) Pre-Trial Date: |
| Plaintiff, | ) Discovery Cut-Off: |
| | ) |
| v. | ) **PLAINTIFF'S OPPOSITION TO** |
| | ) **DEFENDANTS GOOGLE AND** |
| AUTOMATTIC, INC., et. al., | ) **AUTOMATTIC'S MOTION TO** |
| | ) **DISMISS, POINTS AND** |
| | ) **AUTHORITIES IN SUPPORT** |
| | ) **THEREOF** |
| | ) Hearing Date: August 21, 2014,9:30 a.m. |
| | ) Department C |
| Defendants. | ) Hon. Laurel Beeler, Magistrate Judge |

TO EACH PARTY AND THEIR ATTORNEY OF RECORD:

Plaintiff Jeffrey Wilens dba Lakeshore Law Center respectfully submits these points and authorities and argument in opposition to Defendants Google Inc. and Automattic Inc.'s Motion to Dismiss pursuant to Rule 12 (b) (6).

DATED: July 23, 2014

Respectfully submitted,

1

1

By      ___/s/ Jeffrey Wilens_____

2

JEFFREY WILENS
Attorney and Plaintiff in Pro Se

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO GOOGLE AND AUTOMATTIC'S MOTION TO DISMISS CV-14-02419-LB

## STATEMENT OF CASE

Plaintiff is an attorney licensed in the State of California and authorized to appear in all state courts in California and a number of federal courts in California and Colorado, as well as before the United States Supreme Court and the Ninth Circuit Court of Appeals. Plaintiff holds trademarks or service marks on "Jeffrey Wilens" and "Lakeshore Law Center." He has had these since at least 1992. These common law trademarks are pending registration under serial numbers 86193592 and 86193589 respectively. Plaintiff operates a national law office under these trademarks and maintains websites at www.lakeshorelaw.org and www.creditrepairdebt.org as well as at other Internet locations. There is only one attorney named Jeffrey Wilens in the USA and only one law firm named Lakeshore Law Center in the USA. Plaintiff is known for a specialized practice in consumer and employment law and it is not unusual for him to receive inquiries from potential clients throughout the United States. (Doc. 23, ¶¶ 8-11.) Over the past 20 years, Plaintiff has spent tens of thousands of dollars advertising and promoting his personal and business name. (Doc. 23, ¶ 12.)

Last year, a cybersquatter, currently named as Doe No. 1, created accounts with Google and Automattic for the purposes of diverting search engine traffic by clients and potential clients of Plaintiff from Plaintiff's websites to the websites controlled by Doe No. 1. He did this for purposes of commercial gain and with intent to tarnish or disparage Plaintiff's marks by creating likelihood of confusion. (Doc. 1, ¶ 17.)

The use of the name "Jeffrey Wilens" in commerce was likely to cause confusion or to deceive as to the affiliation, connection or association of the ownership of the aforementioned websites. (Doc. 23, ¶ 23.) As a result of these trademark infringements, Plaintiff has suffered damages in that potential and actual clients have been misdirected

to the offending websites by virtue of the fact they appear prominently in the list of websites generated by "Googling" Jeffrey Wilens or Lakeshore Law Center. If Doe No. 1 had not been allowed to use the names "Jeffrey Wilens" or "Lakeshore Law Center" in the domain names, the search engines would not have ranked these offending websites so highly.  (Doc. 23, ¶ 24.)

## POINTS AND AUTHORITIES

## ARGUMENT

## I.   THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO ESTABLISH LIABILITY.

Defendants have submitted a declaration (Doc. 28-1) from attorney Joseph Gratz offering alleged printouts of the relevant websites as they existed between June 2, 2014 and July 10, 2014.  **Plaintiff objects** to these Exhibits.  They are not part of the FAC and are not the appropriate subject of judicial notice.  Moreover, Defendants have not filed a motion for judicial notice.  In addition, the original complaint was filed May 25, 2014 which is before the websites were supposedly printed out.  Therefore, these exhibits should not be considered in ruling on this motion.

Defendants argue the exhibits can be considered under the incorporation by reference doctrine described in <u>Knievel</u> v. <u>ESPN</u> (9th Cir. 2005) 393 F.3d 1068, but that case is distinguishable.  The only claim in <u>Knievel</u> was for defamation; there were no trademark violations alleged.  It was necessary to evaluate the alleged defamatory statement in the context of other statements on the offending website.  The appellate court, applying de novo review, explained why it could consider evidence of the contents of the website not included in the complaint:

In doing so, we deviate from the general rule that courts,

2

1

2

3

4

5

6

7

8

9

10

11

12

13

> when ruling on a motion to dismiss, must disregard facts that are not alleged on the face of the complaint or contained in documents attached to the complaint.  Our approach is permissible under the "incorporation by reference" doctrine, which permits us to take into account documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."
> We have extended the "incorporation by reference" doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint.  The rationale of the "incorporation by reference" doctrine applies with equal force to internet pages as it does to printed material. Just as a reader must absorb a printed statement in the context of the media in which it appears, a computer user necessarily views web pages in the context of the links through which the user accessed those pages.  (Id. at pp. 1076-1077 (citations omitted).)

14

15

16

17

Although the FAC does include a defamation claim it is only directed at Doe No. 1 so maybe he or she will be able to introduce evidence of the contents of the website, which are clearly referenced in the defamation claim.

18

19

20

21

22

23

24

25

26

27

28

However, the trademark claims do not require or permit application of the incorporation by reference doctrine here.  Therefore, these defendants cannot put what they claim to be printouts of the websites into evidence.  In the Knievel case, the plaintiff had to quote the defamatory language from the website in the complaint and necessarily incorporated the contents of the website into the defamation claim.  By contrast, Plaintiff is not required to plead the contents of the offending websites to state the trademark claims and has not done so here.  Instead, the complaint focuses on how the website names (URL addresses) are designed to steer traffic from Plaintiff to Doe Defendant No. 1.  Moreover, Plaintiff does dispute the authenticity of the exhibits

3

because they were printed after the complaint was public record and the websites could have been altered by Doe Defendant in the interim.

### A. PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO ESTABLISH LIABILITY FOR CONTRIBUTORY TRADEMARK INFRINGEMENT.

Defendants insist the offending websites are just criticism or "gripe" websites which are not covered by trademark law.  But we don't know that.  It is quite possible that Doe No. 1 is a competitor of Plaintiff or acting on behalf of a competitor and not a former client.  The FAC alleges Doe No. 1 created the websites to divert search engine traffic by clients and potential clients of Plaintiff from Plaintiff's websites to the websites controlled by Doe No. 1.  (Doc. 23, ¶ 17.) Until Doe No. 1's identity can be uncovered, and he is shown not to be a competitor, this allegations stands.  Defendants may argue the websites do not seem to contain any links to Doe's own website, but it is possible that Doe reaches out to visitors by email or through the blogs' message boards.  There is a comments features to these websites.  While public comments seem to be disabled that does not mean there have been no private communications.  Before Plaintiff is allowed to conduct discovery, there is no way to know what communications have gone on between visitors and Doe No. 1, although Defendants may be in possession of that information.

Defendants rely upon <u>Bosley</u> <u>Medical</u> <u>Institute</u>, <u>Inc</u>. v. <u>Kremer</u> (9th Cir. 2005) 403 F.3d 672, a trademark infringement lawsuit against an individual who created various websites critical of the Bosley company.  However, there is an important procedural distinction between that case and the instant case.  The district court in <u>Bosley</u> granted summary judgment on the trademark claim after discovery was conducted.  When the

4

district court ruled in <u>Bosley</u>, it had been established that the defendant was a dissatisfied former patient, that he earned no revenue from the criticism website,  and that he was not marketing any services or linked in any way to one of Bosley's competitors.  (<u>Id</u>. at p. 675.)

By contrast, the instant case is still at the pleading stage and no discovery has been conducted.  It is unknown whether Doe No. 1 is a former client, former defendant, opposing counsel, competitor (or someone working at the behest of a competitor), or has some other personal grudge against Plaintiff.  It is unknown whether the website is being used to steer business away from Plaintiff by emailing or calling anyone who responds to the "blogs" of Doe No. 1.  However, Plaintiff has alleged the websites are used for an anti-competitive purpose.  That allegation must stand—for now.

Defendants also cite <u>Cleary</u> <u>Building</u> <u>Corp</u>. v. <u>David</u> <u>A</u>. <u>Dame</u>, <u>Inc</u>. (D. Colo. 2009) 674 F.Supp.2d 1257, another trademark lawsuit involving a supposed "gripe" site.  The district court dismissed the complaint at the pleading stage.  <u>However</u>, that court considered print outs of the offending websites that were attached to the complaint, which is not the case here.  (<u>Id</u>. at p. 1265.)  Moreover, that defendant was identified as a disgruntled former customer of that plaintiff, which has not been established to be the case here.  (<u>Id</u>. at pp. 1260-1261.)  The ruling in <u>Cleary</u> might have been different if Dame had been a stalking horse for a competitor of Cleary Building Corporation.[1]

Finally, Defendants argue that there is no allegation that they used the trademarked names for the websites.  However, it is alleged that they knew Doe Defendant No. 1 was not Plaintiff and had no legitimate purpose for using Plaintiff's personal or business name in the domain name of the websites.  (Doc. 23, ¶ 21.)  It is

---

[1] In <u>Cleary</u> as in the instant case, there was a claim for defamation which was not subject to the motion for dismiss.

PLAINTIFF'S OPPOSITION TO GOOGLE AND AUTOMATIC'S MOTION TO DISMISS CV-14-02419-LB

further alleged Defendants were aware their actions were and are contributing to the trademark infringements in that Plaintiff provided written notice on or about March 3, 2014 to each of the Defendants and provided specific information describing the trademark infringements and each particular defendant's role in perpetuating them. Each of the Defendants responded in writing and stated they would not take any actions to stop the trademark infringements which they were assisting absent an order from a court of competent jurisdiction. (Doc. 23, ¶ 22.) These facts support a claim for contributory trademark infringement.

The Supreme Court has long recognized a cause of action for contributory trademark infringement. (Inwood Labs., Inc. v. Ives Labs., Inc. (1982) 456 U.S. 844, 854.) "Thus, if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorially responsible for any harm done as a result of the deceit." (Id.) Here, the claim is Defendants were put on notice of the trademark infringement after already being aware of the highly suspicious nature of the domain name selections, but continued to assist the infringer. For example, an Internet hosting company that hosts the website of a third party that infringes the plaintiff's trademark, can be liable, particularly where it has been put on notice of the infringement but refuses to stop assisting it. (Gucci America, Inc. v. Hall & Associates (S.D.N.Y. 2001) 135 F.Supp.2d 409, 549.)

The Lockheed Martin Corp. v. Network Solutions, Inc. (9th Cir. 1999) 194 F.3d 980 case cited by Defendants is not on point. In that case, the court held a domain name registrar was not subject to liability for contributory trademark infringement.

> All evidence in the record indicates that NSI's role differs little from that of the United States Postal Service: when an Internet user enters a domain-name combination, NSI translates the domain-name combination to the registrant's IP Address and routes the information or command to the corresponding computer. Although NSI's routing service is only available to a registrant who has paid NSI's fee, NSI does not supply the domain-name combination any more than the Postal Service supplies a street address by performing the routine service of routing mail.  (Id. at pp. 984-985.)

By contrast, Google and Automattic are not domain name registrars nor do they route commands through the Internet domain name system.  Google and Automattic are web hosting services.  Doe No. 1 is not allowed to create any name he wants and then use it on the Google Blogger or Automattic Wordpress services.  Don't be believe me?  Just try applying for a blog website name www.&^*%$&*&.wordpress.com (and replace the symbols with some form of hate speech).   For example www.killjews.wordpress.com produces a message from Automattic that the website violates the terms of service.

Not only do Defendants have control over the choice of website names but they have control over the contents.  For example, Automattic's terms of service,[2] prohibit and allows for the blocking of any content that violates copyright or trademark rights of others, that contains "spam," that is pornographic, that contains threats of violence, that violates the rights of privacy of others, or that contains "inappropriate" keywords or descriptions of the blogs.  (TOS, ¶¶ 1, 2.)  Similarly, Google's Blogger TOS[3] give Google the power to delete blogs which contain pornography, threats, private information, or which promote illegal conduct such as use of drugs.  These defendants are not like the

---

[2]http://en.wordpress.com/tos/.  If necessary Plaintiff can amend to allege the contents of the TOS.
[3]http://www.blogger.com/content.g?hl=en.

7

Post Office just routing the mail.

**B. PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO ESTABLISH LIABILITY FOR CONTRIBUTORY CYBERSQUATTING.**

Two of the arguments raised by Defendants are addressed above—pertaining to whether the blogs are merely "grip" sites or possibly more and whether Defendants are cybersquatters. It is premature to rule they are just a "gripe" sites and Defendants are liable under secondary liability not as the actual cybersquatter.

Defendants also argue that the ACPA does not apply to "third-level" domain names. Defendants rely on GoForIt Entertainment, LLC v. DigiMedia.com L.P. (N.D. Tex. 2010) 750 F.Supp.2d 712, 723, which held the ACPA would apply to a top or second-level domain name (like wordpress.com) but not a subdomain of that (like lakeshorelaw.wordpress.com). It is far from clear why Congress would make this distinction since the harm is from the use of a trademark-protected name in the domain name. Just as much harm can come from using SonyTV.com as SonyTV.electronics.com. Although GoForIt, supra, was mentioned by a Ninth Circuit court in Del Monte Intern. GmbH v. Del Monte Corp. (C.D. Cal., Feb. 5, 2014, CV 13-5912 RSWL MANX) 2014 WL 462960, *9, it was not actually cited with approval or criticized. Apart from that case, there is a dearth of Ninth Circuit authority.

Perhaps the Court will not need to resolve the foregoing issue because Plaintiff admittedly has a bigger problem on this claim. Although courts in other circuits[4] have ruled otherwise, in Petroliam Nasional Berhad v. GoDaddy.com, Inc. (9th Cir. 2013) 737 F.3d 546, 550, Ninth Circuit ruled there is no cause of action for contributory

---

[4]See, e.g., Ford Motor Co. v. Greatdomains.Com, Inc. (E.D. Mich. 2001) 177 F.Supp.2d 635, 647.

cybersquatting. In doing so, the Ninth Circuit arguably disregarded the United States Supreme Court's holding in <u>Inwood Labs., Inc.</u> v. <u>Ives Labs., Inc</u>. (1982) 456 U.S. 844, 854 recognizing that there is a cause of action for contributory trademark infringement under the Lanham Act. Moreover, it also contradicted the Supreme Court's well established precedent that "when Congress creates a tort action, it legislates against the legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." (<u>Meyer</u> v. <u>Holley</u> (2003) 537 U.S. 280, 285.)

In any event, a Petition for Certiorari was filed on April 14, 2014 and was still pending at the time this lawsuit was filed. According to the Supreme Court docket at <span style="color:purple"><u>http://www.supremecourt.gov/Search.aspx?FileName=/docketfiles/13-1255.htm</u></span>, the Petition is still pending and the current deadline for filing the response to the petition has been extended to August 15, 2014. Therefore, it is respectfully requested that the Court defer ruling as to this cause of action until the Supreme Court has ruled on the certiorari petition. If review is not granted in <u>Petroliam</u> <u>Nasional</u> <u>Berhad</u>, Plaintiff will have to drop this claim against these defendants.

## <u>CONCLUSION</u>

For the above stated reasons, Plaintiff respectfully urges the court to deny the motion to dismiss. However, even if the Court were to grant this motion, the lawsuit should not be dismissed. There remains a claim for defamation against Doe Defendant No. 1, who Plaintiff will be serving third-party discovery to identify as soon as permitted.

DATED: July 23, 2014

<div style="margin-left:30%">

Respectfully submitted,

By ___/s/ Jeffrey Wilens_____

</div>

1

JEFFREY WILENS
Attorney and Plaintiff in Pro Se

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO GOOGLE AND AUTOMATTIC'S MOTION TO DISMISS CV-14-02419-LB