DURIE TANGRI LLP
JOSEPH C. GRATZ (SBN 240676)
jgratz@durietangri.com
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: 415-362-6666
Facsimile: 415-236-6300

Attorneys for Defendant
AUTOMATTIC INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JEFFREY WILENS dba LAKESHORE LAW CENTER,<br><br>Plaintiff,<br><br>v.<br><br>AUTOMATTIC INC., GOOGLE INC., and Does 1 through 100,<br><br>Defendants. | Case No. 3:14-cv-02419-LB<br><br>**DEFENDANT AUTOMATTIC INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date: August 21, 2014<br>Time: 9:30 a.m.<br>Ctrm: C - 15th Floor<br>Judge: Honorable Laurel Beeler |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..........................................................................................................................1

II. ARGUMENT ................................................................................................................................1

    A. The *Lockheed* Case Forecloses Secondary Trademark Liability Here ...............................1

    B. The Complaint Does Not Allege Actionable Trademark Infringement by Anyone ............3

        1. The Court May Consider Printouts of the Websites in Question............................3

        2. Whether or not the Court considers the printouts, the claims are subject to dismissal with prejudice.........................................................................................4

        3. Mr. Wilens' unfounded speculation that Doe No. 1 might be a competitor in disguise does not affect the result. ......................................................................5

    C. Plaintiff Concedes That His ACPA Claim Is Foreclosed by Binding Ninth Circuit Authority ................................................................................................................................7

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bosley Med. Inst., Inc. v. Kremer*,
    403 F.3d 672 (9th Cir. 2005) ............................................................................................... 5, 6

*In re Anonymous Online Speakers*,
    661 F.3d 1168 (9th Cir. 2011) ............................................................................................. 1, 6

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ............................................................................................... 3, 4

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*,
    456 U.S. 844 (1982) .................................................................................................................. 2

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ................................................................................................. 3

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
    194 F.3d 980 (9th Cir. 1999) ............................................................................................... 2, 3

*Petroliam Nasional Berhad v. GoDaddy.com, Inc.*,
    737 F.3d 546 (9th Cir. 2013) .................................................................................................... 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .................................................................................................................. 3

*Yong v. I.N.S.*,
    208 F.3d 1116 (9th Cir. 2000) ................................................................................................. 8

Defendant Automattic Inc. respectfully submits this reply in support of its Motion to Dismiss Plaintiff's First Amended Complaint, ECF No. 28.[1]

## I. INTRODUCTION

The claims against the service providers in this case are a sham designed to make it easier for Mr. Wilens to learn the identity of Doe No. 1 in discovery.  By naming service providers as defendants, Mr. Wilens might have been able to get the identity of Doe No. 1 in exchange for dismissal, without having to make the showing required by *In re Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011), and without facing the possibility a motion to quash from Doe No. 1.  Unfortunately for Mr. Wilens, Automattic would not take the deal, because it believes that the judiciary serves an important role in protecting anonymous speech on the Internet, by acting as a gatekeeper for meritless claims designed to chill online criticism.  The claims should be dismissed with prejudice.

## II. ARGUMENT

Mr. Wilens' trademark claim is subject to dismissal with prejudice for two reasons.  *First*, as discussed in section II-A, his claim does not meet the standard announced by the Ninth Circuit for secondary liability.  *Second*, as discussed in section II-B, there is no underlying direct trademark infringement, so there can be no liability for contributory trademark infringement.  Mr. Wilens' ACPA claim is subject to dismissal because it is squarely precluded by binding Ninth Circuit authority, as discussed in section II-C.

### A. The *Lockheed* Case Forecloses Secondary Trademark Liability Here

Plaintiff appears to concede that the Amended Complaint does not adequately plead a claim for direct trademark infringement against Automattic.  Opp. at 5-6.  He argues now that the Amended Complaint contains facts that would support a claim for *contributory* trademark infringement.  *Id.*  The Amended Complaint does not mention any claim for contributory trademark infringement, but assuming that one is identified in the complaint, there can be no contributory trademark infringement claim against Automattic based on a user's choice of a website name.

---

[1] This motion was filed jointly by Defendants Automattic Inc. and Google Inc.  Plaintiff and Google Inc. subsequently stipulated to dismissal with prejudice.

1
REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 3:14-CV-02419-LB

1 Mr. Wilens is correct that a cause of action for contributory trademark infringement was
2 established in *Inwood Laboratories, Inc. v. Ives Laboratories, Inc*., 456 U.S. 844 (1982).  That case
3 spoke in terms of one who "supplies a product" to a known infringer, where the product is used to
4 achieve the known infringement.  *Id.* at 854.  The Ninth Circuit held in the *Lockheed* case that where a
5 service, rather than a physical product, is involved, the application of contributory infringement is
6 narrower.  *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999).  Where
7 a service is involved, there cannot be contributory liability unless the defendant has "[d]irect control and
8 monitoring of the instrumentality used by a third party to infringe the plaintiff's mark."  *Id.*  In *Lockheed*,
9 the defendant had accepted for registration the allegedly infringing name and "translate[d] the domain-
10 name combination to the registrant's IP Address and route[d] the information or command to the
11 corresponding computer."  *Id.* at 985.  Permitting that name to be chosen and routing requests containing
12 that name to the appropriate website was not direct control and monitoring of the instrumentality used for
13 infringement, because the defendant did not choose the domain name in question and to simply allowing
14 a particular name to be chosen by another is not to control an instrumentality of infringement.  *Id.*

15 Here, Automattic's participation in the alleged infringement is the same as the defendant's in
16 *Lockheed*: Automattic did not prevent the selection by a third party of an allegedly trademarked website
17 *name*, and did not deactivate that *name* upon request.  Indeed, Plaintiff emphasizes in his opposition that
18 he does not make any trademark claim based on the contents of the websites, but instead that "the
19 complaint focuses on how the website names (URL addresses) are designed to steer traffic from Plaintiff
20 to Doe Defendant No. 1."  Opp. at 3.  Thus, Mr. Wilens is clear that he is alleging, for example, that his
21 trademark rights are infringed by the use of his name in the website address
22 "attorneyjeffreywilens.wordpress.com," not the use of his name in the website contents (for example,
23 "Jeffrey Wilens is fighting for his own agenda, for greed rather than his clients agenda for justice.")  ECF
24 No. 28-3 at 1.  There is no daylight, in terms of level of involvement, between Network Solutions' role in
25 permitting the selection of "skunkworks.com" and Automattic's role in permitting the selection of the
26 website names at issue here.

27 The fact that Automattic's service is available only to those who abide by its Terms of Service
28 does not affect the analysis.  In *Lockheed*, defendant NSI placed conditions on the availability of its

1  service—it was "only available to a registrant who [had] paid NSI's fee"—but that did not put NSI in
2  control of the allegedly infringing activity.  *Lockheed*, 194 F.3d at 984.
3      Automattic did not choose the website names at issue.  Under *Lockheed*, Automattic is not
4  secondarily liable for allowing another to choose those website names through its service.

5      **B.**    **The Complaint Does Not Allege Actionable Trademark Infringement by Anyone**
6          **1.**    **The Court May Consider Printouts of the Websites in Question**

7      Mr. Wilens agrees that the contents of the websites in question "are clearly referenced in the
8  defamation claim" contained in the Amended Complaint.  Opp. at 3.  But he argues that they may not be
9  considered by the Court in adjudicating this motion, because this motion relates to other claims in the
10  complaint.  That is not how the incorporation-by-reference doctrine works.  That "doctrine permits a
11  district court to consider documents whose contents are alleged in **a complaint** . . . ."  *In re Silicon
12  Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999).  It is not limited to documents whose
13  contents are alleged in certain sections of a complaint; it applies to the plaintiff's complaint in its
14  entirety.  *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (in deciding a
15  motion to dismiss, courts may consider "documents incorporated into **the complaint** by reference")
16  (emphasis added).  If Claim I of a complaint pleads a fact that dooms Claim II, a plaintiff may not avoid
17  dismissal by arguing that he pleaded that fact only in relation to Claim I.  By the same token, because Mr.
18  Wilens' defamation claim incorporates by reference documents that doom his trademark claims, Mr.
19  Wilens may not avoid dismissal of those claims by arguing that the court must blind itself to certain
20  portions of the complaint.

21      The incorporation-by-reference doctrine applies to documents attached to a motion to dismiss
22  "whose authenticity no party questions."  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  Mr.
23  Wilens says that he "does dispute the authenticity of the exhibits because they were printed after the
24  complaint was public record and the websites could have been altered by Doe Defendant in the interim."
25  Opp. at 4.  Speculative objections of this sort are not cognizable.  The web postings contained in the
26  website printouts bear dates, and none of those dates is after the filing of this action.  Mr. Wilens does not
27  describe the differences he believes exist between the website printouts and the websites that are referred
28  to in the Amended Complaint, or present any basis for thinking that any such differences exist.  When the

court speaks of materials "whose authenticity no party questions," *Silicon Graphics*, 183 F.3d at 986, it does not invite a plaintiff to avoid dismissal simply by stating that he has some speculative or metaphysical question about the documents. There must be some reason to think that the documents are not what they purport to be. Mr. Wilens has not presented such a reason.

### 2.   Whether or not the Court considers the printouts, the claims are subject to dismissal with prejudice.

Even setting aside the material incorporated by reference into the Amended Complaint, the noncommercial, critical nature of the websites in question is apparent. Each of the website excerpts quoted within the four corners of the Amended Complaint demonstrate that the purpose of the website is to criticize Mr. Wilens, not to impersonate him.

*First*, the Amended Complaint alleges that "Defendant stated that 'Jeffrey Wilens is engaging in the same activity that many lawyers, disbarred and/or jailed were engaged in.'" Am. Compl. ¶ 33. The quoted text appears on jeffreywilens.com. *See* ECF No. 14-1 (Hyland Decl.) at 29.

*Second*, the Amended Complaint alleges that "[e]lsewhere on the Internet, Defendant stated: 'JEFFREY WILENS IS USING SAME TACTITS [sic] AS ATTORNEY'S [sic] WHO HAVE BEEN JAILED AND DISBARRED. Many lawyers using the same unethical tactics as Jeffrey Wilens and have disbarred and jailed. Jeffrey Wilens unethical moves will catch up to him and he will be next to be disbarred.'" Am. Compl. ¶ 36. That text appears on lakeshorelawcenter.wordpress.com. *See* ECF No. 28-2 (Gratz Decl. Ex. A) at 2.

*Third*, the Amended Complaint alleges that "Defendant stated 'Jeffrey Wilens gets the millions while his clients the 'victims' get nothing.'" Am. Compl. ¶ 38. The quoted text appears on jeffreywilens.com. *See* ECF No. 14-1 (Hyland Decl.) at 28.

*Fourth*, the Amended Complaint alleges that "Defendant stated 'Jeffrey Wilens makes up victims for his baseless class action suit.'" Am. Compl. ¶ 39. That text appears on lakeshorelawcenter.wordpress.com. *See* ECF No. 28-2 (Gratz Decl. Ex. A) at 5.

*Fifth*, the Amended Complaint alleges:

> Defendant created and published a false review from supposedly an actual client of Plaintiff. In the review the supposed client stated "Jeffrey contacted me and asked me to be a victim in one of his frivolous litigation

against a major corporation (I would prefer not to name the corporation) [sic] as I'm currently working with them to cooperate in a suit against Mr. Wilens."

Am. Compl. ¶ 40. The quoted text appears on lakeshorelawcenter.wordpress.com. *See* ECF No. 28-2 (Gratz Decl. Ex. A) at 6.

*Sixth*, the Amended Complaint alleges that "[i]n the published statements Defendant admitted his goal was to cause Plaintiff to suffer 'agony.'" Am. Compl. ¶ 42. The quoted text appears on jeffreywilens.com, in the context of the sentence, "[w]e hope that you will soon have a taste of all the agony you brought upon us, your victims over the years." ECF No. 14-1 (Hyland Decl.) at 26.

These statements, both individually and taken together, show that the purpose of the websites in question is not to "mislead consumers into buying a competing product," but instead to criticize Mr. Wilens. *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 679 (9th Cir. 2005). Accordingly, because "[a]ny harm to [Wilens] arises not from a competitor's sale of a similar product under [Wilens'] mark, but from [the anonymous speaker's] criticism" of Mr. Wilens, he "cannot use the Lanham Act either as a shield from [the anonymous] criticism, or as a sword to shut [the anonymous critic] up." *Id.*, 403 F.3d at 680.

### 3. Mr. Wilens' unfounded speculation that Doe No. 1 might be a competitor in disguise does not affect the result.

In the Opposition, Mr. Wilens concedes that "criticism or 'gripe' websites" are "not covered by trademark law." Opp. at 4. He argues, however, that "[i]t is quite possible that Doe No. 1 is a competitor of Plaintiff or acting on behalf of a competitor and not a former client." *Id.* There are two problems with this line of argument: it misunderstands the Ninth Circuit's holding in the *Bosley* case and, by allowing any anonymous critic to be unmasked, it runs contrary to the Ninth Circuit's policy in favor of lawful anonymous speech.

#### a. The *Bosley* rule does not depend upon the identity of the speaker, but on the nature of the speech.

Criticism is not trademark infringement, no matter who it comes from. A competitor is as free to criticize a company as a disgruntled customer, without interference from trademark law. "The Supreme Court has made it clear that trademark infringement law prevents only unauthorized uses of a trademark

in connection with a commercial transaction in which the trademark is being used to confuse potential consumers." *Bosley*, 403 F.3d at 676.  Criticism confuses no-one: when Dunkin' Donuts posts ads saying, "Friends Don't Let Friends Drink Starbucks," they are advertising their own coffee, and they are uttering the trademark STARBUCKS, but they are not doing anything that could confuse consumers about who they are.  Thus, for trademark purposes, it doesn't matter if Doe No. 1 is a disgruntled opposing party or a disgruntled former client or a competitor; the point is that anyone reading UnitedVictimsOfJeffreyWilens.wordpress.com or any of the other websites in question would understand that, because they sharply criticize Mr. Wilens, the people who run them are not Mr. Wilens.  That is all that trademark law requires.

            **b.**      **Taking into account a critic's identity in considering whether to dismiss a trademark claim would harm anonymous speech.**

Requiring proof of an anonymous speaker's identity in order to dismiss a trademark claim relating to anonymous speech would also contravene the public policy of protecting anonymous speakers against whom there is no meritorious claim.  A plaintiff should not be able to use an artfully pleaded trademark claim as a back door to learning the identity of his anonymous critic.  But that is precisely what Mr. Wilens' theory would allow.

Under Mr. Wilens' theory, anonymous online critics can *always* be unmasked by bringing a claim for trademark infringement against the company that hosted the critical website, because the plaintiff can simply insist that the anonymous critic might be a competitor in disguise.  This theory contravenes the policy behind the Ninth Circuit's anonymous speech jurisprudence.  The Ninth Circuit has recognized "the important value of anonymous speech" and requires a showing that a claim is meritorious before permitting an anonymous speaker to be unmasked.  *In re Anonymous Online Speakers*, 661 F.3d at 1173.  The merits of Mr. Wilens' claim for defamation against Doe No. 1 are not presently before the court, of course—but the court should not adopt a rule that would result in the disclosure of an anonymous speaker's identity where that rule does not take into account the merits of the claim against that speaker.

### c. There is no allegation and no basis for an allegation that Doe No. 1 is a competitor.

In arguing that his claims should not be dismissed because Doe No. 1 might be a competitor, Mr. Wilens refers to the allegation in the Amended Complaint that "Doe No. 1 created the websites to divert search engine traffic by clients and potential clients of Plaintiff from Plaintiff's websites to the websites controlled by Doe No. 1" and argues that "[u]ntil Doe No. 1's identity can be uncovered, and he is shown not to be a competitor, this allegations [sic] stands." *Id.*  But, of course, the Amended Complaint does not contain any allegation that Doe No. 1 is a competitor; it alleges that Doe No. 1 created the websites in order to divert people away from Mr. Wilens' own website, which lauds Mr. Wilens, and toward Doe No. 1's websites, which criticize him.  That allegation is in no way inconsistent with the idea that Doe No. 1 is exactly who he claims to be: a defendant in a lawsuit in which Mr. Wilens was counsel for the plaintiff, who wishes to express his views about Mr. Wilens' conduct in litigation.

Mr. Wilens has previously represented to this Court, under penalty of perjury, that he believes the websites to have been posted by the defendant in a lawsuit in which he was counsel for the plaintiff: "There are a few former defendants I suspect might be the anonymous poster on the website, course, but I am not going to name Doe without some supporting evidence.  I have approached counsel for some of the suspects but none of their clients would come forward and admit they are the anonymous poster." ECF No. 25 at 7 (Wilens Decl.) ¶ 7.  It is curious, to say the least, for Mr. Wilens to make a legal argument in a signed pleading based on the premise that Doe No. 1 might be a competitor, where he has sworn that he does not believe that to be the case.

### C. Plaintiff Concedes That His ACPA Claim Is Foreclosed by Binding Ninth Circuit Authority

Mr. Wilens concedes that his ACPA claim is foreclosed by the Ninth Circuit's decision in *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546, 554 (9th Cir. 2013).  He argues, however, that the case is wrongly decided, and requests "that the Court defer ruling as to this cause of action until the Supreme Court has ruled on the certiorari petition." Opp. at 9.  Defendants disagree with Plaintiff's arguments regarding the merits of *Petroliam Nasional Berhad*, but we will not discuss that disagreement because it does not make any difference.  "[O]nce a federal circuit court issues a decision,

the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority." *Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000) (vacating stay order).  The Ninth Circuit has held that service providers like Automattic do not perform functions that may make them liable under the ACPA; because that is the binding law of the circuit, Mr. Wilens' ACPA claim must be dismissed.

Dated:  July 31, 2014                                       DURIE TANGRI LLP

                                                                       By:        */s/ Joseph C. Gratz*
                                                                                       JOSEPH C. GRATZ

                                                                       Attorneys for Defendant
                                                                       Automattic Inc.

**CERTIFICATE OF SERVICE**

I certify that all counsel of record is being served on July 31, 2014 with a copy of this document via the Court's CM/ECF system.

                                                     */s/ Joseph C. Gratz*
                                                     JOSEPH C. GRATZ